UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| XIAOYUAN MA,<br><br>               Petitioner,<br>v.<br><br>ERIC HOLDER; et. al.,<br><br>               Respondent. | Case No. 5:12-cv-0536 EJD<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS**<br><br>**[Docket Item No. 5]** |

Presently before the Court is a Petition filed by Petitioner, Xiaoyuan Ma ("Petitioner"). Petitioner has previously filed a motion to reopen a final removal order before the Board of Immigration of Appeals ('BIA'). That motion is currently pending before the BIA. See, Petition, at ¶ 26. Dkt Item No. 1.

In this Court, Petitioner seeks a writ of habeas corpus granting a stay of deportation during the BIA's adjudication of her motion to reopen. See id. Petitioner alleges that the Court has jurisdiction over this case under the Habeas Corpus statute, 28 U.S.C. § 2241. Respondent argues that, regardless of whether Petitioner's claims fall within 28 U.S.C. § 2241, Congress has stripped the Court of jurisdiction over Petitioner's claims by way of 8 U.S.C. § 1252.

Pursuant to Local Civil Rule 7–1(b), the Court concludes that this motion and petition are appropriate for determination without oral argument. Having reviewed the relevant portions of the

1

Case No. 5:12-cv-0536 EJD

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

record – including the Petition and the Parties' briefs – the Court concludes that it lacks jurisdiction over this case. Respondent's motion to dismiss will therefore be granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a citizen of the People's Republic of China. See id., at ¶ 1. Since November, 2003, Petitioner has resided with her current husband and five children in Daly City, California. See id.

Petitioner was originally admitted to the United States on February 10, 1995, as a conditional permanent resident based on a prior marriage. See id., at ¶ 14. That marriage eventually ended in divorce and Petitioner's conditional residency was terminated. See id. She remarried in September, 1997, and again obtained conditional residency status. See id., at ¶ 15. However, Citizenship and Immigration Services ("CIS") terminated her status for a second time after Petitioner failed to appear for an immigration interview. See id., at ¶ 17. She and her second husband thereafter divorced on September 23, 2003. See id.

Petitioner married her current husband on November 14, 2003. See id., at ¶ 18. She applied for an adjustment of her immigration status based on her marriage on December 23, 2003, but her application was denied by CIS on November 7, 2005, due to a finding of marriage fraud. See id. Petitioner was then summoned to appear by the Department of Homeland Security on December 29, 2005, and appeared before the San Francisco Immigration Court with former counsel, Justin Wang. See id., at ¶ 19. During those proceedings, Petitioner conceded removability but requested asylum and relief under the Convention Against Torture. See id. Her requests were denied after an evidentiary hearing on August 30, 2006. The BIA dismissed her administrative appeal on January 9, 2008. See id., at ¶¶ 21, 22. A petition for review was denied by the Ninth Circuit Court of Appeals on November 29, 2011. See id., at ¶ 23.

On August 26, 2011, Petitioner consulted with her present counsel who filed a motion to reopen with the BIA due to ineffective assistance of counsel. See id., at ¶¶ 24, 25. Petitioner argues that her former counsel (Wang) prevented her from applying for cancellation of removal based on "exceptional and extremely unusual hardship" to her children pursuant to 8 U.S.C. § 1229b(b)(1).

See id., at ¶¶ 3, 4, 24, 25. That motion is currently pending before the BIA. Highly relevant to this case is the fact that the deportation order has *not* been stayed pending the BIA's decision. See id., at ¶ 26.[1]

On February 21, 2012 this Court issued an Order Granting Request for Stay of Deportation Proceedings and an Order to Show Cause. See, Dkt Item No. 2. Given the extensive administrative record, the Court sought submissions from the parties that have now been reviewed for determination without oral argument.

## II.   DISCUSSION

This case presents the issue of whether habeas relief should be granted within the context of immigration law.  Determining the scope of habeas relief in this context is not without difficulty; ever more so by the "myriad of jurisdiction-stripping provisions enacted by Congress." See, Kambo v. Poppell, No. 5:07-CV-0800, 2007 WL 3051601 *3 (W.D.Tex.2007); 2007 U.S. Dist. LEXIS 77857 *3 (W.D. Tex. Oct. 18, 2007). Because of these provisions, it is little wonder that immigration law has been described by some courts as "second only to the Internal Revenue Code" in terms of its complexity. See, Castro–O'Ryan v. U.S. Dep't of Immigration and Naturalization, 847 F.2d 1307, 1312 (9th Cir.1988). See also, Soberanes v. Comfort, 388 F.3d 1305, 1312 (10th Cir.2004) (stating that the intersection of immigration and habeas "marks an evolving and challenging area of the law.")    Indeed, statutory provisions of the past two decades have perforated the Suspension Clause to such an extent that appellate courts are now the *primary* vehicle for adjudicating cases such as the present. Assessing when a district court is divested of jurisdiction – so that an appellate court can entertain relief – is the crux of the present case.

Here, Respondent argues that the Court lacks jurisdiction to entertain Petitioner's relief based upon several lines of attack.  To address the first of these contentions, the Court turns to the threshold issue of whether Petitioner is 'in custody' to allow for subject matter jurisdiction under 28 U.S.C. § 2241.

---

[1] Further, what makes this case one of first impression in the Northern District of California, is that the BIA has not denied the stay, either. See, Response, Dkt Item No. 5.

3
Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

**A. Whether Petitioner, who is subject to removal orders and the government's Intensive Supervised Appearance Program ('ISAP'), shown she is 'in custody' so to invoke the writ of habeas corpus?**

To bring a petition for writ of habeas corpus, a person must satisfy the "in custody" requirement under 28 U.S.C. § 2241. See, Miranda v. Reno, 238 F.3d 1156, 1158 (9th Cir.2001); Sheikh v. Chertoff, No. C 03-05604, 2006 WL 463506, 2006 U.S. Dist. LEXIS 10110, (N.D.Cal. Feb. 23, 2006). Federal courts lack jurisdiction to grant habeas relief where the petitioner seeking that relief is not in fact "in custody" at the time the petition is filed. Id. Relevantly, section 2241(c)(3) provides that the "writ of habeas corpus shall not extend to a prisoner unless ... [she] is in custody in violation of the Constitution or laws or treaties of the United States."

Although Petitioner is not, literally, a prisoner of the INS, courts have long recognized that the writ is available to those who suffer such a curtailment of liberty as to render them "in custody" for the purposes of 28 U.S.C. § 2241(c). See, Jones v. Cunningham, 371 U.S. 236, 239–40, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Williamson v. Gregoire, 151 F.3d 1180, 1182 (9th Cir.1998); and Williams v. INS, 795 F.2d 738, 744 n. 3 (9th Cir.1986).

In Williams 795 F.2d 744, the Ninth Circuit made clear that the Supreme Court's expansion of "custody" in the criminal context applies to habeas petitions in the immigration context. In the present case, neither party seems to contend this point. What is in contention is whether Petitioner – who is subject to removal orders and the government's Intensive Supervised Appearance Program ('ISAP') – is 'in custody' for the purposes of the habeas petition. Critical to the disposition of this issue is the principle held in Nakaranurack v. United States, 68 F.3d 290 (9th Cir.1995). There, the Ninth Circuit stated:

> We have broadly construed "in custody" to apply to situations in which an alien is not suffering any actual physical detention; i.e., *so long as he is subject to a final order of deportation*, an alien is deemed to be "in custody" for purposes of the INA, and therefore may petition a district court for habeas review.

Numerous cases have cited the above principle with approval – and while the context of those cases may vary; the principle remains the same – even in spite of the jurisdiction-stripping

4

Case No. 5:12-cv-0536 EJD

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

1   provisions of Congress. See, Simmonds v. INS, 326 F.3d 351, 354 (2d Cir.2003) (holding that a
2   "final order of removal is sufficient, by itself, to establish the requisite custody"); Ramos-Birueta v.
3   INS, 2000 WL 1359593 at*1 (9th Cir. Aug. 11, 2000). (holding that so long as the petitioner is
4   "subject to a final order of deportation, an alien is deemed to be 'in custody' for purposes of the
5   INA." Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir.2001) (same); Galaviz-Medina v.
6   Wooten, 27 F.3d 487, 493 (10th Cir.1994) (same); Mustata v. U.S. Dep't of Justice, 179 F.3d 1017,
7   1021 n. 4 (6th Cir.1999) (holding a final deportation order places an alien constructively "in
8   custody" because of "the specialized meaning those words have in the context of an immigration-
9   related habeas petition"); Khotesouvan v. Morones, 386 F.3d 1298, 1299 n. 2 (9th Cir.2004)
10  (holding that "habeas review is…for 'any alien held in custody pursuant to an order of
11  deportation[.],"); Rosales v. Bureau of Immigration & Customs Enforcement, 426 F.3d 733, 735
12  (5th Cir.2005); Cucalon v. Rice, 317 Fed. Appx. 602, 603–04 (9th Cir.2008); Borrero v. Wells, No.
13  CV 309–096, 2010 WL 3292696,*3, Fn3, 2010 U.S. Dist. LEXIS 85366, *7, Fn3. (S.D.Ga. May
14  25, 2010) (finding that an "individual does not have to be in physical custody to satisfy this
15  requirement; rather, the "in custody" requirement is satisfied when an individual is subject to a
16  final order of removal."); Nganga v. District Director, Cleveland United States Immigration and
17  Customs Enforcement, No. 1:10 CV1059, 2010 WL 2891564, *2, 2010 U.S. Dist. LEXIS 73348,
18  *4-5 (N.D.Ohio 2010) (finding that habeas jurisdiction existed because petitioner was subject to a
19  removal order, but the scope of the habeas jurisdiction was limited by 8 U.S.C. § 1252(g)).

20  In light of the foregoing authorities, several circuits – including the Ninth Circuit – have
21  held that a person does *not* have to be physically detained to satisfy the "in custody" requirement of
22  28 U.S.C. § 2241; rather, the requirement is met when a person is subject to final order of removal.

23  Here, this principle poses a significant obstacle for the Respondent's position on the habeas
24  issue. Respondent, however, attempts to attack the Petition by submitting that the government's
25  Intensive Supervised Appearance Program (ISAP) is not 'custody' for the purposes of habeas

5
Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

jurisdiction.[2] To fortify its position, Respondent cites several cases where a petitioner has not met the custody requirement. On closer inspection of those cases, none fall within the four corners of the facts in this case.  All of them are distinguishable; all of them the Court will briefly address for the purposes of the record.

With respect to Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003), the petitioner sought review of his removal orders after he had already been removed from the United States. The court held that he was not 'in custody' for the purposes of habeas because he was "acting" outside the United States, and thus under no "greater restraint than any other non-citizen living outside American borders." Id.  Here, Petitioner is based in the United States and has been residing within its borders since 1995.  There is nothing in the facts to suggest that she moved outside the United States during the removal proceedings; nor that she has sought to do so.  These facts are distinct from Patel, which dilutes any effect that case may have on existing precedent. See, Nakaranurack 68 F.3d 290. *Cf*. See, Miranda v. Reno, 238 F.3d 1156,1158-59 (9th Cir.2001) and Kumarasamy v. Attorney Gen. of U.S., (3d Cir.2006) 453 F.3d 169 at at172–73 ( holding that where a person has been removed from United States at time of filing a habeas petition, the custody requirement is *not* met.)

The next case, Shamim v. Chertoff, No. C 07-4308, 2008 WL 509335, 2008 U.S. Dist. LEXIS 118581  (N.D. Cal. Feb. 22, 2008) also provides little support to the Respondent's position. There, the court was asked to examine a case that involved immigration, habeas and criminal matters. In holding for the government, the court found the case *moo*t when the relief sought by the petitioner – namely his release from custody – was no longer required for adjudication.

By contrast, the context of the relief sought by Petitioner in this case is quite unique.  She seeks a stay of deportation during the BIA's adjudication of Petitioner's motion to re-open in circumstances where the BIA has *not* granted (or denied) a stay. See, Response, Dkt Item No. 6. Specifically, and unlike Shamim, the relief sought by Petitioner is *not* moot because the BIA is yet

---

[2] On its face, this argument seems misplaced because it ignores the fact that Petitioner is subject to a removal order.  Respondent would seem to be going after the 'smaller fish' (ISAP) and is bypassing the more important requirement for habeas relief (i.e, the removal order).

6
Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

to make a decision on whether to grant the stay during the adjudication of her motion. Pending any potential review of the claims she asserts before the BIA, Petitioner's action in this Court remains a live 'case or controversy' under Article III of the Constitution (at least until the BIA makes an adjudication of Petitioner's motion). See generally, Spencer v. Kemna, 523 U.S. 1, 8-13, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

Respondent cites two further cases, one within the Northern District of California; the other within the District of Oregon. See, Hung Vi v. Alcantar, No. C 07-5527 2008 WL 2683243, 2008 U.S. Dist. LEXIS 75581, (N.D. Cal. Jul. 3, 2008) and Nguyen v. B.I. Inc., 435 F. Supp. 2d 1109, 1114 (D. Or. 2006), respectively. Neither case involves the unique relief sought in the instant case; nor do they confront the principle established in Nakaranurack. Given the hurdle that this principle imposes, Respondent would need to identify more pertinent cases to persuade the Court of its position. No such cases seem to exist. The absence of these cuts against Respondent on the habeas issue, and leads to the conclusion that Petitioner falls within the ambit of 28 U.S.C. § 2241(c).[3]

Finally, while Petitioner is subject to a removal order – and that habeas jurisdiction exists – the scope of that jurisdiction has been stripped by a myriad of provisions enacted by Congress over the past two decades. Determining the scope of habeas is, therefore, critical to the disposition of Petitioner's case.[4] Before making that determination, it is important to examine the issue of whether Petitioner has exhausted all relevant administrative remedies so to permit judicial adjudication of the relief sought. This is where the Court next turns.

---

[3] The Court further observes that the facts of this case are such that Petitioner is not only subject to an order for removal, which falls squarely within the principle in Nakaranurack; but Petitioner is also subject to ISAP. Although such supervision is not critical to the holding that Petitioner is 'in custody', the government's ISAP supervision does not detract from the Petitioner's habeas position either.

[4] While Respondent fails on the habeas issue because Petitioner was subject to a 'removal order', it only serves to strengthen the conclusions on 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252 (a)(5), below; specifically, the removal order triggers the application of these jurisdiction stripping provisions in favor of the Respondent's motion to dismiss.

7
Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

**B. Has Petitioner exhausted: (1) all statutory remedies 'as of right', pursuant to 8 U.S.C.A. § 1252 (d); and (2) all prudential remedies, so to allow for judicial adjudication of the Petition?**

### 1. Exhaustion of Statutory Remedies

Little contention was raised by Respondent concerning Petitioner's failure to exhaust either statutory or prudential remedies. There was, however, a footnote in Respondent's brief that cites two cases with respect to exhaustion suggesting that Petitioner has not met this threshold requirement. See, Motion to Dismiss, Dkt Item No.5 citing Sun v. Ashcroft, 370 F.3d 932, 941 (9th Cir.2004) and Puga v. Chertoff, 488 F.3d 812 (9th Cir.2007). Those cases interpreted the statutory provision for administrative exhaustion. Relevantly, 8 U.S.C.A. § 1252 (d), provides:

> A court may review a final order of removal only if –
> (1) the alien has exhausted all administrative remedies available to the *alien as of right*, and
> (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order. (*emphasis added*)

To qualify as a remedy 'available as of right', a remedy "must enable the agency to give unencumbered consideration to whether relief should be granted." See, Ashcroft 370 F.3d 932, 941. In Ashcroft, the court traced Ninth Circuit case-law which considered administrative remedies 'as of a right' in the statutory context. Specifically, the court quoted Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), which stated: "When the BIA receives a motion [to reopen], it need only consider whether to reopen its prior order, but it is *not* required to do so. Because the BIA need not actually reopen its prior decision, a motion to reopen is considered a request for discretionary relief, and does not constitute a remedy that must be [statutorily] exhausted." Id.

This holding was also echoed in Chertoff 488 F.3d 812. That case involved a motion to reopen, which was the only administrative remedy available to the petitioner to bring his claim for ineffective assistance of counsel. The court confirmed existing precedent that held that "a motion to reopen was not an administrative remedy as of right" and, as such, § 1252(d)(1) did not apply. Id. at 815.[5] Here, and by analogy with Chertoff, a motion to re-open is the only remedy available to

---

[5] *Cf.* Nken v. Chertoff, 559 F.Supp.2d 32. In that case, the court suggested that the Fourth Circuit could not obtain jurisdiction over the petitioner's request for a stay of removal until the petitioner

Petitioner to bring her claim for ineffective assistance of counsel. Because that remedy is not an administrative remedy as of a right; section 1252(d)(1) does not apply, and thus no concern exists regarding statutory exhaustion in the present case.

### 2. Exhaustion of Prudential Remedies

Administrative exhaustion can also be "judicially imposed as a matter of prudence." Id. Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Noriega–Lopez v. Ashcroft, 335 F.3d 874, 880–81 (9th Cir.2003).

In Chertoff, prudential exhaustion was dispositive of the petitioner's case. There, the court held in favor of the government. The reasoning was two-fold. First, petitioner had presented his claim for ineffective assistance of counsel before the district court *without* bringing the same claim before the BIA. This precluded the BIA from the "first pass on the claims in order to generate a proper record for review." Id. at 815. Second, because the petitioner had presented the claim before the district court, any determination by that court "would encourage the deliberate bypass of the administrative scheme." Id. at 815. See, also Liu v. Waters, 55 F.3d 421, 426 (9th Cir.1995).

Here, Petitioner escapes the holding in Chertoff because unlike the petitioner in that case, Petitioner *has* filed a motion to reopen before the BIA. It thus follows that she has satisfied the prudential requirement because the motion to reopen generates a proper administrative record. This view also squares with Liu, where the court held that a habeas petitioner must first file a motion to reopen before he has "exhausted his claims" for the purposes of obtaining habeas relief. Liu 55

---

exhausted all administrative remedies. Despite the petitioner filing a third motion to reopen based on a claim of changed conditions in his home country of Cameroon, the court agreed with the parties who had stated that the administrative remedies "would not be deemed exhausted until the BIA has rendered a decision" on the pending third motion to re-open. Id. at 38, Fn2. While the facts are similar to this case, the Court does not agree with Chertoff on this point and is guided by Ninth Circuit precedent that holds that "a motion to reopen is considered a request for discretionary relief, and does not constitute a remedy that must be [statutorily] exhausted." Ashcroft 370 F.3d 932, 941. This, however, does not mean that such remedies should not be exhausted on prudential grounds. See generally, Federal Habeas Corpus Practice and Procedure, 6th ed. Randy Hertz & James S. Liebman. (LexisNexis, 2011).

9

Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

1   F.3d 426.  Liu was further quoted in Chertoff at 815, which only serves to reinforce the notion that

2   Petitioner has also met the prudential requirement.

**C. Whether a stay – allowing for the BIA to consider a third motion to reopen a removal order – constitutes a "cause or claim arising from a decision or action by the Attorney General to execute removal orders" pursuant to 8 U.S.C. § 1252(g)?**

Respondent's next argument contends that the Court lacks jurisdiction to entertain Petitioner's relief pursuant to 8 U.S.C. § 1252(g).   Respondent contends that the Court lacks jurisdiction based on Congressional intent to strip district courts of the power to restrain federal immigration laws.  See, generally the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRIRA") and the REAL ID Act of 2005. See, also H.R.Rep. No. 104-469(I), at 161 (1996), and H.R.Rep. No. 109–72 at 174 (2005).

Relevantly, section 1252(g),[6] provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.* (*Emphasis Added*)

The Supreme Court has construed § 1252(g) narrowly and held that it applies to only "three types of discretionary decisions by the Attorney General – specifically, to commence proceedings, to adjudicate cases, or to execute removal orders." INS v. St. Cyr, 533 U.S. 289, 311 n. 34 (2001). In at least those situations, courts have consistently concluded that 8 U.S.C. § 1252(g) divests "a court" of jurisdiction to entertain "any *cause or claim* by an alien *arising from* the decision or action ... to ... *execute removal orders*" Id. § 1252(g). Nken v. Chertoff, 559 F.Supp.2d 32, 36 (D.D.C.2008); Mejia–Espinoza v. Mukasey,Case  No. CV 08-7984-FMC, 2009 WL 235625, *3,

---

[6] Some courts have lumped 8 U.S.C. § 1252 (a)(5) and 8 U.S.C. § 1252(g) together in motions to dismiss a writ of habeas corpus. See, for example, Mejia–Espinoza v. Mukasey,Case  No. CV 08-7984-FMC, 2009 WL 235625, *3, 2009 U.S. Dist. LEXIS 127321, *5-6   (C.D.Cal.2009). Given that the operative words of 8 U.S.C. § 1252(g) stem from IIRIRA on the one hand; and that the language in 8 U.S.C. § 1252 (a)(5), in its entirety, stem from the REAL ID Act on the other, the Court tends to think that it is best to separate these provisions in the present analysis.  It must be remembered that the mischief that the REAL ID Act sought to remedy was the Suspension Clause concerns observed in INS 533 U.S. 289.

10
Case No. 5:12-cv-0536 EJD

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

2009 U.S. Dist. LEXIS 127321, *5-6 (C.D.Cal. Jan. 27, 2009) and Rosales v. Aitken, No. 11-CV-4246 2011 WL 4412654, *3, 2011 U.S. Dist. LEXIS 108256, *7 (N.D. Cal. Sep. 21, 2011). See generally, Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482-86, (1999).

Here, the key issue is whether Petitioner's claims "aris[e] from" the decision to execute removal orders against her. To determine this issue, the phrases: "cause or claim" and "arising from," deserve some judicial consideration. Before undertaking that task, the Court is mindful that jurisdictional statutes – such as the present one – should be read narrowly, and with fidelity to the terms and structure of the statute. Canada Life Assurance Co. v. Converium Ruchversicherung (Deutschland) AG, 335 F.3d 52, 57 (2d Cir. 2003). The Court is also mindful that it should *not* look beyond "plain meaning of the statutory language" except when confronted by ambiguity or with a result that tends towards "absurdity" in the application of the statute. United States v. Weaver, 275 F.3d 1320, 1331 (11th Cir.2001) and Harris v. Garner, 216 F.3d 970, 976 (11th Cir.2000) (en banc) Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 662, (1994).

**1. 'Cause or claim'**

Case law construing the words "cause or claim", in the context of 8 U.S.C. § 1252(g), is sparse. To determine the plain meaning of these words, the Court refers to Black's Law Dictionary 281 (9th ed 2009) (hereinafter 'Black's'), which defines a claim as: "(1) The aggregate of operative facts giving rise to a right enforceable by a court. (2) The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional. (3) A demand for money, property or a legal remedy to which one asserts a right." While the word, "cause" in isolation, is not defined,[7] Black's does define the phrase, "cause of action". That phrase is defined as: "A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one to obtain a remedy in court from another person."[8] See, Black's, supra, at 251.

---

[7] Note: Black's defines 'cause' in the tortious context. This context is surely one that the drafters did not seek to incorporate in immigration law.

[8] Cause of action is further addressed in Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure, 170 (2d Ed.1899) ("What is a cause of action? Jurists have found it difficult to give proper definition. It may be defined generally to be a situation or state of facts that entitles a party to maintain an action in a judicial tribunal. This state of facts may be – (a) a primary right of the plaintiff actually violated by the defendant; or (b) the threatened violation of such a right,

11

Case No. 5:12-cv-0536 EJD

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

Here, Petitioner seeks to obtain relief in the form of a stay of deportation while her motion to re-open is adjudicated by the BIA. To obtain that relief, a court is required to address the discretionary approach that was articulated by the Supreme Court in Nken v. Holder, 556 U.S. 418, 434 (2009). There, the Supreme Court distilled the discretionary approach to four-factors – including: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id.

Relevant to this case, and to obtain the stay, Petitioner will need to address the first factor – namely, whether she has made a strong enough showing that she is likely to succeed on the merits. Assessment of this factor requires analysis of the claim(s) that Petitioner seeks to put before this Court in the habeas petition. This includes a claim for ineffective assistance of counsel predicated on the failure of her former counsel to raise an argument under 8 U.S.C. § 1229b(b)(1).[9] See, Petition, Dkt Item No.1 at ¶ 1, 25 and 33. This claim thus forms the basis for the stay application for Petitioner. At first blush, the Court would need to consider the merits of that claim to determine whether the stay should be granted which, amongst other things, would require analysis of "operative facts giving rise to a right" that is ultimately "enforceable by a court" for the purposes of 8 U.S.C. § 1252(g). See, Black's , at 251 and 281 (defining claim and cause of action).

---

which violation the plaintiff is entitled to restrain or prevent, as in case of actions or suits for injunction; or (c) it may be that there are doubts as to some duty or right, or the right beclouded by some apparent adverse right or claim, which the plaintiff is entitled to have cleared up, that may safely perform his duty or enjoy his property.")  quoted in Black's, at 251.

[9] See, 8 U.S.C. § 1229b(b)(1), which provides: "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien-- (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

Accordingly, there is little doubt that the Court will be required to adjudicate a 'claim' in this case, albeit in the context of a stay application. Given this conclusion, the Court now turns to the construction of the phrase 'arising from' that is also prescribed in 8 U.S.C. § 1252(g).

**2. 'Arising from'**

Section 1252(g) strips courts of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." As held in Reno, section 1252(g) is narrowly construed. See, 525 U.S. 471, 482. Another case, Humphries v. Various Federal USINS Employees, 164 F.3d 936, 945 (5th Cir.1999), is also instructive. It provides further clues to how the phrase, 'arising from', should be construed:

> At one end of that spectrum we find claims clearly *not* included within the definition of "arising from," i.e., those claims with no more than a *weak, remote, or tenuous* connection to a "decision or action by the Attorney General to execute removal orders."[citations omitted] At the other end of the spectrum we find claims that clearly are included within the definition of "arising from," i.e., those claims connected *directly and immediately* with a "decision or action by the Attorney General to execute removal orders." (*Emphasis Added*)

See, Humphries 164 F.3d 936, 945.[10] See also, Tsering v. U.S. Immigration & Customs Enforcement, 403 F. App'x 339, 342 (10th Cir. 2010) and Pelletier v U.S., No. 11–cv–01377 2012 WL 1044682, *4 (D. Colorado. March 28, 2012). While the language in § 1252(g) does not lend itself to precise definition, the passage above certainly assists in providing guidance for when claims of a petitioner fall within the ambit of § 1252(g) so to preclude district court jurisdiction.

In light of Humphries' construction, the Court concludes that Petitioner's relief – requesting a stay of the execution of the BIA's removal order – falls within the ambit of section 1252(g). Clearly, the relief she seeks – and the claim(s) upon which that relief is based – is one that that is connected "directly and immediately" to a "decision or action" by the Attorney General to execute a removal order. This conclusion is also reinforced by Nken v. Chertoff, 559 F.Supp.2d 32, 36 (D.D.C.2008) – a case with facts markedly similar to the instant one. There, the court was

---

[10] Note – The Ninth Circuit's decision in Sissoko v. Rocha, 509 F.3d 947, 950-51 (9th Cir.2007) cites Humphries 164 F.3d 936 with much approval but does not engage as deeply into how the phrase 'arising from' should be construed. See also, Katherine F. Riordan, "Comment, Immigration Law: Enforcing Administrative Exhaustion Requirements for Pattern and Practice Claims Concerning Due Process Violations During Immigration Raids --Aguilar v. United States Immigration & Customs Enforcement", 42 Suffolk U. L. Rev. 377, 381 (2009).

13
Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

asked to provide a stay pending the BIA's decision on the petitioner's motion to reopen. Despite the court's concern that a "draconian result" could follow the court's dismissal of the case – being deportation of the petitioner several days from the petition – the court was forced to apply § 1252(g) which divested the court of habeas jurisdiction. Id. at 37, Fn 2.

Here, as in Chertoff, the hands of the Court are tied. Section 1252(g) provides a vice-like grip on the outcome of this case. Like Chertoff, the Court is also forced to conclude that § 1252(g) bars the grant of habeas relief because the section applies to a "decision or action" to "execute removal orders." This is exactly what Petitioner seeks to stay in her prayer of relief. Thus, not only has § 1252(g) foreclosed the Court's adjudication in this case, but several other cases have also adhered to this result, which, for better or worse, ultimately, reflects the Congressional goal of "channeling review" of these cases to the "court of appeals." See, H.R.Rep. No. 109–72 at 174.[11] See also, Mejia–Espinoza, 2009 WL 235625, *3, 2009 U.S. Dist. LEXIS 127321, *5-6 and Rosales 2011 WL 4412654, *3, 2011 U.S. Dist. LEXIS 108256, *7. De Leon v. Napolitano, No. C 09-3664 2009 WL 4823358 *3, 2009 U.S. Dist. LEXIS 121729 *3  (N.D. Cal. Dec. 10, 2009).

Accordingly, Respondent's motion to dismiss the habeas petition is granted under 8 U.S.C. § 1252(g).

**D. Whether the grant of a stay of a removal order by this Court falls within the definition of judicial review for the purposes of 8 U.S.C. § 1252(a) (5) and 8 U.S.C.A. § 1252 (b)(9)?**

Respondent also contends that the Court lacks jurisdiction to entertain Petitioner's relief pursuant to 8 U.S.C. § 1252 (a)(5). Respondent asserts that this section of the REAL ID Act stripped district courts of habeas jurisdiction, and vested jurisdiction to review such orders "exclusively in the court of appeals." See, Motion to Dismiss, Dkt Item No.5. Relevantly, 8 U.S.C. § 1252 (a)(5), provides:

---

[11] Note – while the substance of § 1252(g)'s operative language was enacted under IIRIRA, verbiage was added to further reinforce preclusion of habeas review under the REAL-ID Act. Specifically, the following verbiage was added: "*including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title*". Congress subsequent amendment of section 1252(g) thus made clear that it "preclude[s] any habeas corpus review" over the claims made by a petitioner. See, Kumarasamy, 453 F.3d at 172 n.5.

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title [the mandamus statute and the All Writs Act], a petition for review filed with the appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

This section should also be read with subsection (b)(9) – entitled "Consolidation of questions for judicial review" – which states:

> When Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Both these provisions were newly enacted in the REAL ID Act and sought to "give every alien a fair opportunity to obtain judicial review while restoring order and common sense to the judicial review process." H.R.Rep. No. 109–72 at 174 (2005). See also, Gerald L. Neuman, On the Adequacy of Direct Review After the REAL ID Act of 2005, 51 N.Y.L. Sch. L. Rev. 133, 135 (2006) ( stating that Congress "enacted these amendments to preserve a minimum level of judicial inquiry into the lawfulness of removal orders.")

Petitioner's primary argument was that the relief it sought – being (1) the grant of the habeas petition and (2) an order to issue a stay during the BIA's adjudication of a motion to reopen – were collateral matters that did "not implicate final orders of removal". See, Response, Dkt Item No. 6 at 2. Specifically, the Petitioner argued that because these matters were collateral to a removal order, the relief did not trigger application of § 1252(b)(9) of the REAL ID Act – and thus the Court could not be stripped of jurisdiction.[12] The Court, though, disagrees with Petitioner.

---

[12] Petitioners' reliance on Singh v. Gonzales, 499 F.3d 969 (9th Cir.2007), is misplaced. This view is largely based on reasons recently noted in Mejia–Espinoza, WL 235625, *3, 2009 U.S. Dist.

15

Case No. 5:12-cv-0536 EJD

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

Several courts have addressed the very issue that confronts Petitioner in this case – most of which have been cited above, including: Nken, 559 F.Supp.2d 32; Mejia–Espinoza, 2009 WL 235625, *3, 2009 U.S. Dist. LEXIS 127321, *5-6 and Rosales 2011 WL 4412654, *3, 2011 U.S. Dist. LEXIS 108256, *7. De Leon, 2009 WL 4823358 *3, 2009 U.S. Dist. LEXIS 121729 Critically, Petitioner provides no meaningful rebuttal of these cases; all of which have construed § 1252 (a)(5) so to preclude habeas relief in cases such as the present.

In Rosales, for example, the court examined the issue of whether a stay application required "review of a final order for removal." See, 2011 WL 4412654. *3, 2011 U.S. Dist. LEXIS 108256, *7. The court found in the affirmative. The court said that no matter how the "petitioner framed the motion," it would be one that sought to "halt a final order of removal" and, as such, fell within the jurisdiction-stripping ambit of § 1252 (a)(5) and § 1252(b)(9). Id.

The Chertoff case is equally instructive. Similarly, in that case, the petitioner did not escape the vice-like grip of 8 U.S.C. § 1252 (a)(5). The court held that the petitioner "overlooked" the fact that his relief was a stay of the BIA's final order of removal (affirmed by the Fourth Circuit), which would have required the court to "review" the order to grant the relief. Id. at 36.

In light of the foregoing authorities, and no matter how Petitioner frames the argument in this case, the petition is one that seeks to halt a final order of removal. Such relief strips this Court of jurisdiction – barring it from exercising judicial review of the habeas petition. This conclusion is further supported by the policy underlying the REAL ID, where courts addressing 8 U.S.C. § 1252 (a)(5) have found that the provision implements Congress' goal of "channeling review to the courts of appeals." Despite contentions to the contrary, it is this Congressional goal that the Court is guided by in finding for the Respondent on this issue. See, H.R.Rep. No. 109–72 at 174 and Rosales 2011 WL 4412654 *3, 2011 U.S. Dist. LEXIS 108256, *7.

---

LEXIS 127321, *5-6, Fn2 and Rosales 2011 WL 4412654, *3, Fn2.Specifically, Singh involved a case where counsel had failed to file a timely petition after the petitioner's removal proceedings, giving rise to an ineffective assistance of counsel claim.  Here, Petitioner's claim does not arise from violations arising after the removal proceedings at issue; but, rather her prior counsel failed to apply for cancellation during the removal proceedings under 8 U.S.C. § 1229b(b)(1). See, Petition, Dkt Item No.1 at ¶ 1, 25 and 33.

16
Case No. 5:12-cv-0536 EJD
ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

Accordingly, Respondent's motion to dismiss the habeas petition is also granted under §§ 1252 (a)(5) and (b)(9).[13]

### III.   CONCLUSION

For the reasons stated above, the Court grants Respondent's motion to dismiss Petitioner's writ of habeas corpus pursuant to 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252 (a)(5) and (b)(9).

Since the order operates as a final adjudication of this case, the Clerk shall close this file, accordingly.

**IT IS SO ORDERED.**

Dated: May 16, 2012

EDWARD J. DAVILA
United States District Judge

---

[13] The Court notes that given that it is stripped of jurisdiction in this case, it is worth observing what was said in, Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003).  There, the court said "Subsection 1252(a)(1) confers jurisdiction upon this court to review "any final order of removal." 8 U.S.C. § 1252(a)(1). Implicit in this jurisdictional grant is the authority to review orders denying motions to reopen any such final order. Chow v. I.N.S., 113 F.3d 659, 664 (7th Cir.1997) (stating that "'any final order of [removal]' as used in [§ 1252(a)(1)] includes orders to ... reopen any such final order of deportation"); Sarmadi v. I.N.S., 121 F.3d 1319 (9th Cir.1997)."